Leonard E. Austin and Dorothy Austin v. Commissioner.
Austin v. Commissioner
Docket No. 83870.
United States Tax Court
T.C. Memo 1962-22; 1962 Tax Ct. Memo LEXIS 287; 21 T.C.M. (CCH) 102; T.C.M. (RIA) 62022; February 1, 1962
*287 Held, that the petitioners have not carried their burden of proof to show error in the respondent's disallowance of certain expenses and losses claimed as deductions on their returns, and alleged by petitioners to have been incurred and sustained in carrying on a trade or business of "research, experimentation and development." Porter B. Williamson, Esq., 2219 E. Cedar St., South Bend, Ind., for the petitioners. George H. Becker, Esq., for the respondent. PIERCE *288 Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent determined deficiencies in the income taxes of the petitioners for the calendar years 1955, 1956, and 1957, in the amounts of $445.83, $724.32, and $707.18, respectively. Petitioners claim overpayments for said years in the following amounts: $224.71 for 1955; $455.87 for 1956; and $364.37 for 1957. The issue is whether the principal petitioner is entitled to sundry deductions for business expenses and losses, which he claimed on his returns for the years involved and which he contends were incurred and sustained in a business of "research, experimentation and development." Findings of Fact Some of the facts have been stipulated. The stipulation of facts and the exhibits identified therein, are incorporated herein by reference. The petitioners, Leonard and Dorothy Austin, *289 are husband and wife; and they reside in South Bend, Indiana. They filed a joint Federal income tax return for each of the taxable years 1955, 1956, and 1957 here involved, with the district director of internal revenue at Indianapolis, Indiana. The term "petitioner," in the singular, will have reference hereinafter to Leonard Austin. In 1930, petitioner received a patent on an electrical plug attachment; and in 1946, he began experimenting with the development of a power screw driver, a large power tool designed for use in factories. Thereafter in early 1948, petitioner applied for a patent on the power screw driver, and in December 1948, he assigned his rights under the patent application to a manufacturing concern, Illinois Tool Works, under a royalty arrangement. Petitioner was issued a patent covering said power screw driver in 1953. During the years 1949 through 1951, petitioner was employed by Illinois Tool Works; and while so employed, he designed a small power screw driver, a power tool that could be held in the hands of a person using it. Petitioner applied for a patent on the hand power screw driver in 1951, and he was issued a patent thereon in 1956. Petitioner terminated *290 his employment with Illinois Tool Works at the end of 1951; and shortly thereafter he became employed by BendixProducts Division of Bendix Aviation Corporation in South Bend, where he continued to be employed throughout the taxable years and thereafter. Petitioner received a salary for his services as an employee of Bendix, which ranged between $10,000 and $11,000 per year, during the taxable years. Petitioner's duties with Bendix, during said years, were principally to supervise the design and development of automation equipment for use by Bendix in its manufacturing operations. Six patents have been issued to Bendix, based upon inventions which petitioner made in connection with his work on automation equipment; and, at the time of the trial of the instant case, there were six applications pending for issuance to Bendix of patents on other inventions made by petitioner while he was working for Bendix. Petitioner was permitted by Bendix, during the taxable years, to perform part of his services for the company in a workshop located in the basement of petitioner's residence. Petitioner volunteered the use of said workshop, because he found it more convenient at times, and also because *291 there was hostility on the part of some Bendix employees toward the development of automation equipment. Petitioner did not seek or receive reimbursement from Bendix for the use of his shop. During the taxable years, petitioner owned and operated his own airplane. At various times during the period, petitioner made plane trips in connection with the performance of his work as an employee of Bendix. He was reimbursed by Bendix for the expenses of operating his plane on some of his trips; but, as to the remaining trips, petitioner refrained from submitting requests for reimbursement in order that the company's expenses allocable to petitioner's automation project could be kept down. In the basement workshop mentioned hereinabove, petitioner experimented during the taxable years with the development of an automatic electric coffee maker, designed for installation in automobiles. He applied (at some date not shown by the record, but possibly during the taxable years) for a patent on the coffee maker; and after the taxable years, a patent thereon was issued to him. During the taxable years, petitioner installed one of these coffee makers in one of his automobiles; and he made several *292 trips to Chicago in search of a manufacturer of the coffee maker, and also to demonstrate this appliance to Chicago police officials with a view to having them install coffee makers in police scout cars. Petitioner did not maintain any financial records or books of account (other than his check stubs) relating to his workshop activities - either in connection with his work for Bendix or in connection with his own work in developing the coffee maker. In 1956, petitioner determined to move from the house on McKinley Avenue in South Bend which he was then occupying as the personal residence of himself, his wife, and their 10-year old son, because the workshop area in the basement thereof was too small for his needs and also because noise on the adjacent street disturbed him. Accordingly, petitioner sold the McKinley Avenue residence in July 1956, and moved to a new residence. Petitioner suffered a loss of $2,600 on the sale of the McKinley Avenue property. On the Federal income tax return which petitioner and his wife filed for each of the taxable years here involved, he reported on Schedule C thereof ("Profit (or Loss) from Business or Profession") the following amounts of income, *293 deductions, and resultant losses: 1955
1956
1957
Income
None
None [1]
$2,529.25 [2]
Deductions
Attorney fees - patent
$ 524.75
Attorney fees - tax
200.00
Telephones
$ 240.00
$ 100.00
Trains and travel
300.00
123.90
Tooling
300.00
Depreciation
$1,449
1,329.00
Gasoline
430
Property repair
700
Attorney fees
1,000
175.00
Professional books
60
Hangar rent
210
100.00
Car insurance (1/2)
100
Labor
275.00
Materials & supplies
115.00
Taxes
32.00
Bad debts
50.00
Patent application
150.00
Airplane, business use
150.00
Insurance
100.00
Total deductions
$1,564.75
$3,949
$2,699.90
Loss
$1,564.75
$3,949
$ 190.65 [3]
*294 On April 15, 1957, petitioner and his wife filed an amended return for 1955; and in Schedule C thereof, he again reported no income, but reported deductions in the increased amount of $2,439, made up of the following: Depreciation
$1,261
Gas (business use)
450
Repairs & maintenance
100
Hangar rent
210
Books & trade publications
30
Miscellaneous travel expense
150
Trade organizations
10
Insurance - airplane
128
Insurance - business property
100
Total
$2,439
The depreciation deductions claimed on the 1955 return (amended) and on the returns for 1956 and 1957, were computed with respect to the following assets: Petitioner's airplane; his two automobiles (on the basis that each was used one-half of the time for business use); and certain unspecified assets listed as "Office and Equip." and "Tools and Equip." Petitioner did not utilize the loss shown on the 1956 return in the computation of taxable income for that year; but a claim for refund was subsequently filed by petitioner and his wife, wherein they sought the benefit of said reported loss for 1956. Also, on the 1956 return, petitioner reported on Schedule D thereof ("Gains and Losses from *295 Sales or Exchanges of Property") a loss on the sale of his McKinley Avenue residence ($2,600) and a loss on the sale of an unimproved lot ( $182) - for a total loss of $2,782, which he treated as a loss on sales of property used in a trade or business. Petitioner used said loss as an offset to the taxable portion of his capital gains for 1956 arising from the assignment of his power screw driver patent to Illinois Tool Works. The respondent, in his statutory notice of deficiency, determined in here material part as follows: 1. He disallowed the deductions claimed (as shown in the table above) for 1955 and 1957, and he gave the following explanation: It is determined that you have not substantiated that any of the * * * [deductions] which you listed on the Schedule C * * * are allowable deductions under Sections 162, 174, or any other sections of the Internal Revenue Code of 1954 * * *. Further, Sections 261, 262, and 263 of the Internal Revenue Code of 1954 prohibit a deduction for such items, and you have not established that such items, if deductible at all, are not in fact properly deductible by another taxpayer. [1]
*296 2. He disallowed the loss claimed on the 1956 return, arising from the sale of the McKinley Avenue residence and the unimproved lot. 3. He determined that the proceeds from the sale of the power screw driver patent, which petitioner reported on Schedule C of the 1957 return, did not "comprise receipts from a business or profession," but were rather gains from the sale of a capital asset, taxable as long-term capital gains. Opinion The issue here is as to the deductibility of the numerous expenses claimed by petitioner on the return for each of the taxable years involved, and of the losses claimed on the 1956 return (all of which expenses and losses are listed and described in our Findings of Fact). Petitioner contends that the same were incurred and sustained by him in the operation of a trade or business of "research, experimentation and development," separate and apart from his trade or business of being an employee of Bendix. Respondent disallowed the deduction of said items on the grounds: (1) That petitioner had not substantiated the claimed expenses; (2) that the expenses and losses were personal, rather than business, in character; and (3) that, to the extent any of *297 such expenses were impressed with a business character, they were deductible "by another taxpayer" (i.e., Bendix). The petitioner has not, in our view, carried his burden of proof of establishing error in the respondent's presumptively correct determination. The only evidence introduced to substantiate the expenses claimed as deductions were Exhibits 5, 6, and 7; and these exhibits were nothing more than a list of the checks drawn by the petitioner and his wife on their personal bank account during each taxable year - 123 checks for 1955; 129 for 1956; and 117 for 1957 - showing the date of each check, the name of the payee, the amount and the name of the drawer (petitioner or his wife). There is no way whatsoever to tie the checks listed on the exhibits to the amounts claimed as deductions on the returns. There was no testimony regarding the purpose for which any particular check was drawn. These exhibits are wholly inadequate as proof to substantiate the deductions claimed. Furthermore, we are convinced that many of the claimed expenses were incurred partly in developing the coffee maker, partly in performing services as an employee of Bendix, and partly for the purely personal *298 needs of petitioner and his family. For aught that this record shows, petitioner could have had reimbursement from Bendix for those expenses which he incurred while working for that company; but he refrained, for reasons of his own, from seeking reimbursement. Such portion of the expenses were those of Bendix, and petitioner can not convert them into his own by paying them and not seeking reimbursement therefor. Heidt v. Commissioner, 274 F. 2d 25 (C.A. 7); Horace E. Podems, 24 T.C. 21. The only portion of the expenses deducted on the returns which could conceivably qualify for deduction, would be those related to the development of the coffee maker; but the record in this case will not permit us to disentangle this portion from the other nondeductible portions - i.e., the Bendix and the purely personal expenses. Turning briefly to the losses claimed on the 1956 return, there were two in number: The loss claimed on the sale of the McKinley Avenue residence property, and the loss on the sale of the unimproved lot. There is no evidence concerning the claimed loss on the sale of the lot; and as to that loss the respondent's determination is sustained by reason *299 of petitioner's failure to carry his burden of proof of showing error in the respondent's determination. With regard to the claimed loss on the sale of the residence, the law is that generally, a loss on sale of a personal residence is non-deductible. D. A. Belden, 30 B.T.A. 601; Income Tax Regs., sec. 1.165-9(a). Here again, as in the case of the expenses, the record does not permit us to separate any portion of the loss that possibly could be allocated to the business use of the workshop - the only portion of the loss that could conceivably qualify for deduction. Petitioner contends that he was in a business of his own of carrying on "research, experimentation and development," and that all of the expenses above listed in our Findings of Fact are deductible under section 174(a)(1) as research and experimental expenditures incurred in carrying on that business; and that the claimed losses on the sales of the residence and of the unimproved lot were on property used in his alleged trade or business. Since we are of the opinion that petitioner has not substantiated his claimed deductions or shown the portions of his expenses and losses incurred *300 in his alleged trade or business, we do not pass upon the factual question of whether he actually was engaged in such a trade or business. We do note that few, if any, of his claimed expenses would qualify as "research and experimental expenditures," as those terms are defined in the regulations under section 174(a)(1). See Income Tax Regs., sec. 1.174-2. We sustain the respondent's determination that the expenses claimed in Schedule C of the returns for 1955, 1956 and 1957, and the losses on the sales of the residence and unimproved lot claimed on Schedule D of the 1956 return, are not deductible. Decision will be entered for the respondent. Footnotes
1. On Schedule C of the 1956 return, line 1 (total receipts), the following notation appeared: "Receipts from sale of patent shown on attached Schedule D in accordance with House Bill #6143, enacted June 1956." ↩
2. This amount represents royalty payments received by petitioner from Illinois Tool Works in 1957, in respect of power screw drivers manufactured under his patent assigned to said company in 1948, as above mentioned. ↩
3. This amount is mathematically incorrect; the figure should be $170.65.↩
1. As above found, petitioner did not utilize the loss reported in his 1956 return in the computation of taxable net income for said year; and the respondent, in his notice of deficiency, consequently made no adjustment to disallow any of the expenses giving rise to said loss. However, the respondent did include in said notice of deficiency (paragraph (g)), a determination that the 1956 expenses were not allowable, which determination was cast in the same language as that above quoted.↩